UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
NORTHERN DIVISION

| | | |
|---|---|---|
| **ROSE M. LUERA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CAUSE NO.: 1:07-cv-101** |
| | ) | |
| **HEART CENTER MEDICAL** | ) | |
| **GROUP, a/k/a MEDICAL GROUP** | ) | |
| **OF FORT WAYNE, P.C.,** | ) | |
| **CONNIE WILLIAMS,** | ) | |
| **JERRY SCHLUND, JODI BIR,** | ) | |
| **ALICIA STRAKA, ALICE UHRICK** | ) | |
| **and JOEL SAUER, CEO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

### I.  INTRODUCTION

The *pro se* plaintiff, Rose M. Luera ("Luera"), who is of Hispanic national origin, brings this suit against her former employer, Heart Center Medical Group, a/k/a Medical Group of Fort Wayne, P.C. (referred to herein as "the Heart Center"), as well as some of her former co-workers.[1]  (Docket # 1.)  Luera asserts that she was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2, on the basis of her national origin and was retaliated against after complaining about a co-worker's discriminatory comments. (Docket # 1.)

On December 4, 2007, the Defendants moved for summary judgment on all claims.

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331.  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

1

(Docket # 24.)  A Notice in compliance with Local Rule 56.1 was issued to Luera and informed her that any response must be filed within thirty days.  (Docket # 26.)  No response has been filed.  Having reviewed the motion and record, the motion for summary judgment will be GRANTED.

## II. FACTUAL BACKGROUND[2]

Luera began her employment as a medical records clerk with the Heart Center on January 13, 2003.  (Luera Dep. 27-28, 34-35, Ex. G.)  At the time she was hired, Luera received a copy of the Personnel Policy and went through an orientation checklist.  (*Id.* 35-37, Exs. B-D, E.)

Luera knew that the Heart Center had a harassment policy that required that all harassment be reported to a supervisor.  (Luera Dep. 40-41.)  Moreover, there were others to whom harassment could be reported.  (*Id.* 41.)

Luera also knew at the time that she was hired that the Heart Center had an attendance policy and that they would not tolerate excessive absences.  (Luera Dep. 41-42.)  In fact, the policy provided that one or more absences without proper notification or justification could lead

---

[2]Luera failed to respond to Heart Center's Motion for Summary Judgment.  Thus, at this juncture, Luera has seemingly abandoned all of her claims.  *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 n.2 (7th Cir. 1996) (concluding that plaintiff had abandoned claim after failing to respond to defendant's arguments concerning such claim in its motion for summary judgment); *see generally Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (emphasizing that "summary judgment is the put up or shut up moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events" (internal quotation marks and citations omitted)); *Echemendia v. Gene B. Glick Management Corp.*, No. 1:05-cv-53, 2007 WL 869196, at *5-6 (N.D. Ind. March 20, 2007), *aff'd*, No. 07-1902 (7th Cir. Feb. 6, 2008) (unpublished).  In any event, Luera failed to submit a factual statement called for by Local Rule 56.1; therefore, she has conceded Defendants' version of the facts as set forth in their memorandum supporting summary judgment. (*See* Defs' Mem. in Supp. of the Mot. for Summ. J. 2-7); *Reilly v. U.S. Dept. of Energy*, No. 07 C 995, 2007 WL 4548300, at *3 (N.D. Ill. 2007) ("The Seventh Circuit has repeatedly 'sustained the entry of summary judgment when the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.'") (citing *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000)).

to termination.  (*Id.* 42.)  If an employee was absent for more than three days without reporting and calling in, the Heart Center would assume that the employee voluntarily abandoned his or her employment.  (*Id.* 42-43.)

Later in 2003, Luera received a promotion to Filer Technician.  (Luera Dep. 44, Exs. I, J.)  In 2004, Luera was asked to take on some translation duties as well.  (*Id.* 43-44.)

On or about March 21, 2005, Luera had a performance review with her supervisor Alice Uhrick.  (Luera Dep. 48-49, Ex. K.)  The review noted that Luera had exceeded her allowable time off and that she could improve her attendance.  (*Id.* 50-51, Ex. K.)  Uhrick also told Luera that her absences were creating a hardship in the department.  (Uhrick Aff. ¶ 4.)

On January 17, 2006, Luera had another meeting with Uhrick.  (Luera Dep. 58; Uhrick Aff. ¶ 5.)  Luera complained that her co-workers, Jodi Bir, Alicia Straka, and Connie Williams, were criticizing her for the time she had been taking time off.  (Luera Dep. 58; Uhrick Aff. ¶ 5.)  Uhrick asked that Luera inform her about any more inappropriate remarks.  (Uhrick Aff. ¶ 7.)  Luera did not provide specific examples but did remark that other employees were giving her dirty looks.  (Luera Dep. 61-62; Uhrick Aff. ¶ 7.)  Luera told Uhrick that her husband told her that if anybody had anything to say to her, Luera should just walk off the job.  (Uhrick Aff. ¶ 6.)

Out of an abundance of caution, Uhrick called Bir, Williams, and Straka into her office to discuss this matter.  (Uhrick Aff. ¶ 8; Luera Dep. 62-63.)  Luera confronted Williams about why other employees were discussing the fact that Luera was taking off work.  (Uhrick Aff. ¶ 8; Luera Dep. 66.)  Williams denied that other employees were discussing Luera's time off work and that any remark about Luera's absence was made because they were concerned about her health.  (Uhrick Aff. ¶¶ 8, 10; Luera Dep. 67.)  Luera told her co-workers that she did not need

3

anyone's approval for time off except Uhrick, and Uhrick agreed.  (Uhrick Aff. ¶ 9; Luera Dep. 66-67.)  Uhrick later asked everyone, including Luera, to submit a written statement summarizing their version of the meeting. (Uhrick Aff. ¶ 13, Ex. 3; Luera Dep. 74, Ex. O.) According to Luera, the others in the department, Bir, Williams, and Straka bickered all the time.  (Luera Dep. 63-64, 77, 79.)

After the January 17, 2006, meeting, Luera sent Uhrick an e-mail stating that Luera would no longer be translating for other departments, that she would no longer be speaking to Spanish-speaking patients, and that the Heart Center's operators should be informed.  (Uhrick Aff. ¶ 11-12, Exs. 1, 2; Luera Dep. 69-71, Exs. M, N.)  Apparently Uhrick acquiesced to this directive from Luera, and Luera never did any more translating and was no longer referred calls.  (Uhrick Aff. ¶ 11-12; Luera Dep. 71-73.)

In 2006, Luera's attendance began to suffer to the extent that in the first two and a half months of 2006, she missed approximately sixteen days of work.  (Uhrick Aff. ¶ 14; Luera Dep. 81-82.)  Uhrick noted this excessive absenteeism on Luera's March 3, 2006, performance review.  (Luera Dep. 52, 54-55.)

The performance review was followed by Uhrick speaking to Luera on March 9, 2006, and cautioning her that her frequent absences were creating a hardship on the department and that her attendance needed to improve.  (Uhrick Aff. ¶ 15.)  Although Uhrick gave Luera documentation that demonstrated poor attendance, Luera continued to miss work.  (Luera Dep. 82-85, 87, Ex. P.)

On April 21, 2006, Uhrick had another meeting with Luera and provided her with an updated attendance record, as well as a written disciplinary action for her excessive absences.

4

(Uhrick Aff. ¶ 17, Exs. 4, 5; Luera Dep. 87-88, Exs. Q, R.)  In fact, since the March 9, 2006, meeting, Luera had been absent three more times and had taken an extended lunch period. (Uhrick Aff. Ex. 4; Luera Dep. 84-85, Ex. Q.)

Although there apparently was some discussion at the meeting concerning FMLA leave, Luera never submitted any FMLA paperwork and never made an FMLA claim.  (*Id.* 90-91; Uhrick Aff. ¶ 25.)  Nevertheless, Uhrick informed Luera that if she was having personal problems causing absences from work she could contact a representative from the Employee Assistance Program and the Heart Center would pay for it, but Luera never pursued that action. (Uhrick Aff. ¶ 18; Luera Dep. 97.)

On May 11, 2006, Luera's husband called Jerry Schlund, the Chief Information Officer for the Heart Center, and complained that Luera was being discriminated against.  (Uhrick Aff. ¶ 19; Schlund Aff. ¶¶ 2, 4; Luera Dep. 111.)  The Heart Center states that it has a zero tolerance policy for discrimination and that it took the complaint very seriously.  (Uhrick Aff. ¶ 20; Schlund Aff. ¶ 5; Luera Dep. 112.)

The next day, Uhrick and Schlund met with Luera.  (Uhrick Aff. ¶ 20; Schlund Aff. ¶ 5; Luera Dep. 112-14.)  During the meeting on May 12, 2006, Luera informed Uhrick and Schlund that she thought her co-workers were discriminating against her by hiding her work.  (Uhrick Aff. ¶ 21.)  According to Uhrick, this was the first time that Luera had made this complaint.  (*Id.*) Uhrick told Luera that the work was not assigned to any one person, that it was rotated, and could end up on any filer's desk.  (*Id.*)  Luera claimed that one co-worker made derogatory remarks about Mexicans when telling another co-worker that while in Arizona she observed some Mexicans under a bridge.  (Uhrick Aff. ¶ 22; Schlund Aff. ¶ 6; Luera Dep. 122.)

5

According to Uhrick and Schlund, this claim was the extent of Luera's allegations of national origin discrimination.  (Uhrick Aff. ¶ 22; Schlund Aff. ¶ 6.)  At the request of Schlund, Uhrick spoke to Luera's co-workers, and Luera never complained to either Schlund or Uhrick again about discriminatory treatment.  (Uhrick Aff. ¶ 23; Schlund Aff. ¶ 7; Luera Dep. 123-25.)

At the same meeting, Schlund discussed with Luera her poor attendance and cited to an example of a former employee who had exhausted all her paid time off ("PTO") and was terminated.  (Uhrick Aff. ¶ 24; Schlund Aff. ¶ 8; Luera Dep. 126.)

On May 24, 2006, Luera called in and stated that she would not be at work due to a personal matter.  (Schlund Aff. ¶ 9; Uhrick Aff. ¶ 26; Luera Dep. 135.)  At this point, Luera had exhausted all of her PTO.  (Sclund Aff. ¶ 9; Uhrick Aff. ¶ 26.)  Apparently Luera simply decided that she would not return to work at the Heart Center.  (Luera Dep. 135.)  In fact, Luera did not appear for work or call in on Thursday May 25, 2006, or Friday, May 26, 2006, and offered no excuse for her absences.  (Uhrick Aff. ¶ 27-28; Schlund Aff. ¶ 10; Luera Dep. 136.)

On May 25, 2006, Schlund attempted to call Luera to tell her that her paycheck was ready for pickup, but reached only her husband.  (Schlund Aff. ¶ 11.)  Her husband could not tell Schlund whether Luera would be returning to work and referred Schlund to Luera for an answer.  (*Id.*)  Schlund never heard from Luera.  (*Id.*)

On May 30, 2006, Luera did not appear for work.  (Uhrick Aff. ¶ 28; Schlund Aff. ¶ 12; Luera Dep. 136.)  On May 30, 2006, Luera received a letter requesting that she appear for work by June 5, 2006, and provide medical justification for her absences.  (Luera Dep. 136, Ex. FF.)  Luera never provided any documentation and did not return to work.  (*Id.* at 140.)

On or about June 6, 2006, Luera received a letter terminating her employment.  (Luera

6

Dep. 140-41, Ex. GG; Schlund Aff. ¶ 13.)  Luera filed for unemployment benefits but was denied because she could not show good cause for leaving her employment.  (Luera Dep. 20, 141.)  Consequently, Luera filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 22, 2006.  (Luera Dep. 143, Ex. II.)

### III.  STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as  "summary judgment cannot be used to resolve swearing contests between litigants."  *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial."  *Id.* at 771.

## IV. DISCUSSION[3]

*A. Applicable Law*

A plaintiff alleging employment discrimination under Title VII can contest summary judgment by using either the direct or indirect method of proof.  *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007).  The direct method requires the plaintiff to produce enough evidence, either direct or circumstantial, "that could permit a reasonable jury to conclude that the employer acted with discriminatory intent . . . ." *Id.*

The indirect method is the well-known *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *id.*  Here, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under the approach set forth in *McDonnell Douglas,* to establish a *prima facie* case of discrimination, the plaintiff must show that (1) she is a member of a protected class, (2) she was performing to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated employees outside of the protected class more favorably.  *Hossack v. Floor Covering Assocs. of Joliet, Inc.,* 492 F.3d 853, 860 (7th Cir. 2007); *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 558 (7th Cir. 2006).  If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the challenged employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Once the defendant has

---

[3] Luera's Title VII claims of discrimination and retaliation stumble at the outset to the extent that they are brought against her former co-workers (Williams, Straka, Bir, Uhrick, Schlund, and Sauer) since that statute does not impose liability on individuals. *Gastineau v. Fleet Mortgage Corp.*,137 F.3d 490, 493-94 (7th Cir. 1998); *see also Thanongsinh v. Bd. of Educ.,* 462 F.3d 762, 772 n.7 (7th Cir. 2006); *Lewis v. Zion,* No. 1:04-CV-459-TS, 2005 WL 1313682, at *2 (N.D. Ind. May 26, 2005) ("Seventh Circuit precedent states that this Court may not find Zion, as the Plaintiff's supervisor, individually liable under Title VII.").  Accordingly, the Defendants' Motion for Summary Judgment will be GRANTED on Luera's claim against the individual defendants.

done so, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination.  *Id.* at 804.

## B. Luera's Discrimination Claim Fails

Luera offers no direct evidence of discrimination and nothing that suggests even circumstantially that the Heart Center acted with discriminatory intent.  *See Brewer*, 479 F.3d at 915.  Here, Luera would need to show enough circumstantial evidence to compose "a convincing mosaic of discrimination against the plaintiff."  *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).

> Circumstantial evidence demonstrating intentional discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that . . . the employer's reason is a pretext for discrimination."

*Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007) (internal quotations marks and citation omitted); *see also Hemsworth v. Quotesmith.Com, Inc*., 476 F.3d 487, 491 (7th Cir. 2007); *Sun v. Bd. of Trs. of Univ. of Ill*., 473 F.3d 799, 812 (7th Cir. 2007).  Put another way, Luera must produce evidence from which a rational trier of fact could reasonably infer that the Heart Center made its employment decisions concerning her because of her national origin.  *See Bell v. E.P.A.*, 232 F.3d 546, 554 (7th Cir. 2000) (citing *Troupe*, 20 F.3d at 737).  Luera has offered no such evidence.

Furthermore, summary judgment is appropriate because it is also apparent that Luera cannot even establish a *prima facie* case of discrimination under *McDonnell Douglas.  See Gorbitz v. Corvilla, Inc.,* 196 F.3d 879, 882 (7th Cir. 1999) (finding that the district court properly granted summary judgment when former employee failed to establish a *prima facie* case

of discrimination).

At the outset, Luera cannot satisfy the third prong of the *McDonnell Douglas* test because she did not suffer an adverse employment action. Certainly written warnings which result in no negative consequences to Luera do not qualify. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118-19 (7th Cir. 2001) (finding that disciplinary warnings that "did not result in, and were not accompanied by, any tangible job consequence" were not materially adverse employment actions); *Sweeney v. West*, 149 F.3d 550, 556-57 (7th Cir. 1998) ("Absent some tangible job consequence accompanying . . . reprimands, we decline to broaden the definition of adverse employment action to include them. This circuit already has concluded that negative performance evaluations, standing alone, cannot constitute an adverse employment action (but could constitute, under the right circumstances, evidence of discrimination.)"). Although the Heart Center ultimately sent Luera a letter on June 6, 2006, acknowledging that her employment was ended, this was preceded by Luera's decision on May 24, 2006, not to return to work. (Luera Dep. 135.) After all, Luera never returned to work, did not telephone into work as required by policy, and never provided any excuse or justification for her time off work, even after Schlund inquired about her absences. (*Id.* 135-36, 140-41, Ex. GG; Schlund Aff. ¶ 11.) Accordingly, the only reasonable inference that can be drawn is that Luera voluntarily abandoned her employment at the Heart Center and cannot demonstrate that she suffered an adverse employment action.[4]

Luera also cannot meet the second prong of the *McDonnell Douglas* test because she was not meeting the Heart Center's legitimate attendance expectations. The Heart Center

---

[4]Luera does not suggest that she was constructively discharged from her employment at the Heart Center, and the record does not support such a claim. *See Patton v. Keystone RV Co.*, 455 F.3d 812, 818 (7th Cir. 2007).

emphasized to Luera that attendance was critical and that hers was sub-par. *See, e.g., EEOC v. Yellow Freight Sys., Inc.,* 253 F.3d 943, 948 (7th Cir. 2001) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting . . . ."). In short, due to Luera's excessive absenteeism and her failure to follow company guidelines regarding absences, she is unable to establish that she was meeting the Heart Center's legitimate job expectations.

Finally, Luera cannot satisfy the fourth prong of her *prima facie* case that similarly situated employees outside her protected class were treated more favorably. Stated simply, Luera has presented no evidence that the Heart Center treated non-Hispanic employees more favorably than it treated Luera.

Accordingly, because Luera cannot make out even a *prima facie* case, she has failed to give rise to even an inference of discrimination, *see McAlister v. Maximus, Inc.*, No. 04-C-0691, 2006 WL 3692635, at *16 (E.D. Wis. Dec. 12, 2006) ("If the plaintiff establishes all the elements of a prima facie case, the plaintiff raises an inference of discrimination.") (citing *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994)), and therefore summary judgment on this claim must be granted.[5]

### C. Luera's Retaliation Claim Fails

Luera also claims that the Heart Center retaliated against her for engaging in statutorily protected activity, namely making claims of discrimination during her employment. Like discrimination claims, a plaintiff alleging retaliation under Title VII can contest summary judgment through either the direct or indirect method of proof. *Gates v. Caterpillar*, 2008 WL

---

[5]Of course, Luera also cannot show that the reasons offered by the Heart Center were pretextual, and thus her discrimination claim fails at that level as well.

11

141814, at *3 (7th Cir. 2008); *see also Bernier v. Morningstar, Inc.*, 495 F.3d 369, 375 (7th Cir. 2007) (citing *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)).

"To establish a *prima facie* case of retaliation under the direct method, a plaintiff must 'present direct evidence . . . that [s]he engaged in protected activity . . . and as a result suffered the adverse employment action of which [s]he complains,' . . . or circumstantial evidence that would allow the 'jury to infer intentional discrimination by the decision-maker.'" *Anderson v. The Foster Group*, 521 F. Supp. 2d 758, 777 (N.D. Ill. 2007) (citing *Stone*, 281 F.3d at 644; *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007)). "The indirect method requires a plaintiff to show that '(1) [she] engaged in statutorily protected activity; (2)[she] performed [her] job according to [her] employer's legitimate expectations; (3) despite [her] satisfactory job performance, [she] suffered an adverse employment action; and (4)[she] was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.'" *Id*. at 777-78 (citing *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003)). "If the plaintiff cannot satisfy any one element of the *prima facie* case, it is fatal to [her] retaliation claim." *Id.* at 778 (citing *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004)). "Under the indirect method, the plaintiff need not show any causal link between the statutorily protected activity and [her] subsequent treatment; rather, if the plaintiff establishes these four elements, the defendant must 'come forward with a legitimate, non-invidious reason for the adverse employment action.'" *Id*. (citing *Haywood*, 323 F.3d at 531). "If the defendant presents a legitimate, non-invidious reason for the adverse employment action, the plaintiff has the burden to show that the defendant's reason is pretextual." *Id*.

We first begin with the analysis under the direct method. Here, the Heart Center does not

dispute that Luera participated in a protected activity, thus satisfying the first element of her *prima facie* case. *See Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848 (7th Cir. 2007).

The Defendants contend, however, that Luera cannot show that she suffered an adverse employment action. "To prove a materially adverse action in a Title VII retaliation claim, a plaintiff need not meet the same standard of harm of Title VII's substantive anti-discrimination provision, which requires an act constituting a change in the terms and conditions of employment." *Highwood v. Ind. State Police*, No. 2:06-CV-180 PS, 2007 WL 3286811, at *12 (N.D. Ind. Nov. 5, 2007) (citing *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006))). Instead, a broader standard applies: "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S.Ct. at 2415 (internal quotation marks and citations omitted).

At the outset, we do not believe that it can be inferred that Luera suffered an adverse employment action. Indeed, it was effectively *Luera's decision*, not the Heart Center's, to terminate her employment, as evidenced by her abrupt failure to report to work, essentially abandoning her job. Such an outcome is amply underscored by the fact that before terminating her, the Heart Center sent Luera a letter allowing her an opportunity to provide the appropriate documentation to explain her absences, even after she simply stopped coming to work. (Luera Dep. Ex. FF, Ex. GG.) Stated most directly, the Heart Center's formal termination occurred *only after* Luera's job abandonment, and consequently did not amount to an adverse employment

13

action.

Next, the Defendants maintain that the write-ups she received were not adverse employment actions either, and we concur. While disciplinary warnings certainly can constitute adverse employment actions, *Pantoja*, 495 F.3d at 849, we must undertake a contextual inquiry, *id.*, and here the warnings that Luera received were not materially adverse. The verbal counseling and write-ups make no mention of discrimination complaints, but simply noted Luera's excessive absenteeism (a status not genuinely disputed) and warned that if the absenteeism continued she could be terminated per company policy. (*See* Luera Dep. Exs. K, P, Q, R.) Furthermore, the warnings about her attendance problems seemingly did not deter Luera from making a discrimination complaint to her supervisors.[6] After complaining about her co-workers' behavior at the January meeting, she made a discriminatory complaint at the meeting with Uhrick and Schlund on May 12, 2006, and subsequently filed a discrimination charge with the EEOC on May 22, 2006. (Luera Dep. 111-12, Ex. II.) Thus, given that Luera clearly was not deterred by the Heart Center's actions, no reasonable jury could conclude that the warnings she received about her poor attendance were so materially adverse as to "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *See Burlington*, 126 S.Ct. at 2415.

Accordingly, because Luera did not present direct or circumstantial evidence of an adverse employment action stemming from a protected activity, no inference of retaliation arises. *See Anderson*, 521 F. Supp. 2d at 777.

As stated earlier, under the indirect method, the plaintiff must show she (1) engaged in a

---

[6] We do not cite it for authority, but we note that the Fifth Circuit has employed this analysis in *Dehart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007).

14

statutorily protected activity, (2) was meeting her employer's legitimate job expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees.  *Anderson*, 521 F. Supp. 2d at 777-78.  Again, while the Heart Center concedes that Luera engaged in statutorily protected activity, she clearly did not suffer an adverse employment action, as we previously established, and she was not meeting her employer's legitimate expectations because of her poor attendance and failure to comply with company policy.  *Id*. Furthermore, Luera presented no evidence that she was treated less favorably than any similarly situated employee.  *Id*.

Because Luera cannot make out a *prima facie* case of retaliation under either the direct or indirect methods of proof, for the reasons we have recounted, and thus not even an inference of retaliation, summary judgment must be granted in favor of the Defendants.

## V.  CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (Docket # 24) is GRANTED.  The Clerk is directed to enter a judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED this 8th day of February 2008.

                                            S/Roger B. Cosbey
                                            Roger B. Cosbey,
                                            United States Magistrate Judge